Case 21-1781, Enrique Amaya v. United States of America, argument not to exceed 15 minutes per side. Mr. Kalir, when you're ready for the appellant, you may proceed. Good morning. Good morning, Mr. Chief Judge, Your Honors, and may it please the Court, My name is Daron Kalir, and together with my two excellent students, Mr. Philip Shipman and Mr. Micah Isikoff from the Cleveland State University Appellate Practice Clinic, we're here on behalf of Enrique Amaya representing the appellant. May I please reserve four minutes for rebuttal? Thank you, Your Honor. This case involves not one but two questions of first impression before this Court. If I may, Your Honor, I would like to give you a one-minute summary of our position as to each of those questions, and then I will be more than happy to answer your questions. Well, good luck in our holding off, but go for it. Thank you, Your Honor. The first question before this Court today is the application of the concurrent sentence doctrine to federal prisoners challenging their convictions. Not their sentence, their convictions under 2255. And, Your Honors, when we're dealing with judge-made law, I think it's important to listen to the words of the United States Supreme Court, and the Supreme Court in Ray held unanimously in 1986 that since petitioner's ability to pay this total, $300, depends on the validity of each of his three convictions, the sentences are not concurrent. So that was a direct appeal, right? Your Honors, yeah, absolutely. So what do we do with 2255's language that refers to the in-custody requirement? In a minute, Your Honor, I will get to that. I just suggest, I would like to suggest that since Ray and Rutledge foreclosed the line of argument to any form of attack, both direct, indirect, first-step act, and indeed I believe that this Court had thought the same just last year in Brown when a first-step challenge came before this Court, and Your Honors held that because of Ray, citing both Ray and Rutledge, then the concurrent sentence doctrine cannot be used. Does the first-step act have an in-custody predicate? I'm not sure, but what I am sure. Maybe focus on dealing with this 2255 point. I mean, I would really put your energy there if you're hoping to get relief for your client. You've got to get over that. Correct, Your Honor, and we believe that there is a circuit split on this issue with the 2nd, 3rd, and 7th circuits going one way and the 4th and the 8th circuit going another way, agreeing that when the person in custody challenges his conviction as opposed to his sentence, then once the conviction falls, the assessment falls with it, and therefore Ray applies directly. So Ray does, or occurred on direct appeal, but the wordings of Ray do apply to 2255 to the extent that the prisoner is challenging his custody, his entire conviction, I'm sorry, and when the conviction falls, when the building falls, the top falls as well, and that's the $100 assessment. We believe that the other courts, the 2nd and 3rd circuit got it wrong when they focused on the assessment first, but the challenge is on the conviction, and when the conviction falls, and that's exactly the wording of Ray, since petitioner's ability to pay this total $300 depends on the validity of each of his convictions, so he's in custody, he's challenging the validity of the conviction, and although the wording of 2255 speaks of sentence, courts have, as a matter of course, including this court, have ruled that when a 2255 petition is accepted, then the conviction is vacated, not only the sentence, and once the conviction falls, I'm sorry, Your Honor. But the $100 is not custodial. You agree with that? I agree that that element is not custodial, but that's not, we are challenging the entire thing, not the $100. So fine, so even if you're challenging the entire thing, how is he claiming the right to be released from custody? He will never be released from custody. Your Honor. So how is he claiming the right to be released from, I mean, the statute says he must be claiming the right to be released from custody. Correct, Your Honor, and we believe that the answer to that question is that he asked to be released of that custody. It's true that he stays in jail because of the other sentences that were imposed on him, but once he. Is any of this in your brief? I mean, your reply brief says custody is irrelevant. Why are we talking about custody? Your Honor, to the extent that my brief negate what I say now, I would admit that I thought a lot about what the government has argued before this oral argument, and it's important. I read the second and third cases, I think, circuit cases more closely, to understand that we are, it was important for me the point that we are challenging the conviction rather than the sentence, and I think that the second and third circuits got it wrong when they focused on the sentence. If you challenge a conviction, if you're seeking release from custody of that conviction, then the $100 falls, and when the $100 falls, Ray must apply because Ray did not discuss the form of attack. Ray discussed the concurrency of the sentences of this so-called doctrine. Why is the $100 relevant to your theory? Yeah. Your theory is he's in custody for two different things, and I get to attack one thing and say he's no longer in custody for that claim. The $100 has nothing to do with it. I'm not, just making the point, this argument makes the $100 irrelevant. Maybe it's a good argument. I don't know. But $100 is where Ray comes in. If we were at T-0 now and discussing whether it should apply, I would agree that maybe this response by the government makes sense. But Ray is on the books, Your Honor. You don't need Ray. I mean, so first of all, this isn't in your briefing, right? You're making an argument today that you didn't brief. But if we were to talk about that argument, you don't need the $100. You're just saying you can always attack the concurrent sentence because you're sort of attacking the overlapping part of the custody. So there's three layers of life sentences, and you want one to go out, and that counts as release from custody. $100 is irrelevant there. With respect, Your Honor, I believe that Ray speaks exactly to that. Otherwise, it would have been. Ray is not a 2255 case. I mean, you can keep talking about this. I'm just trying to let you know we understand something that you keep pushing on, and it's just not material to the point you're now making. If you want to make it a Ray case, which is the way you argued it, that's fine, but then stick with that. I believe, Your Honor, and I'm sorry if I'm confusing Your Honors. I believe that Ray speaks directly to the concurrency of the sentences. And so if the sentences are not concurrent, then the form of attack, and that is precisely, Your Honor, what I did argue, then the form of attack is not relevant because the concurrent sentence doctrine applies if the sentences are concurrent. And if for federal prisoners the sentences are not concurrent by virtue of imposing the $100, then once the $100 fall, they're not concurrent anymore. And if they might fall because of a result of a 2255, then we're at the same exact place. Right, but let's say we agreed with you. The sentences are not concurrent. The concurrent sentence doctrine cannot apply. Let's say that's right. But you still have to grapple with the fact that in order to get relief under 2255, your client has to have a cause of action. And the cause of action has to be that you're claiming a right to be released from custody. So we read this narrowly, Your Honor, to state that he's releasing from that custody, not from jail actually, because he has two other life sentences. And I understand it's a narrow argument, but that is the custody from which he's seeking relief. Is there a way under this argument that with one fewer sentence you go to a different prison? A different prison, Your Honor? Yes. I'm trying to make the point. I'm trying to help you here. Is it possible that with fewer sentences, fewer life sentences, you're now not treated as someone who's at risk, so you go instead of maximum security, you go to intermediate security? Thank you, Your Honor. Is that a possibility? You're talking about the collateral consequences, and absolutely, yes. I don't know. Oh, sorry, Your Honor. Sorry. Just to answer the question, the question is if you take this out, the conviction you're challenging, is it possible he would go to a different prison? Yes, it is possible, Your Honor. Why? If I may proceed to the next point, it may help reflect back on this. Okay. The second question before you, Your Honor, is whether the first charge with which Amaya was convicted can serve as a predicate offense under the Elements Clause of 18 U.S.C. Section 1924C. And I believe, Your Honor, that here we have a disagreement with the government as to what is the charge for which my client has been convicted. We think that it's merely a conspiracy with intent to commit murder. And the government is of the opinion that this is a conspiracy to commit murder with death results. I think that if we are correct, if this is only with intent to commit, then Woods forecloses the argument here. And therefore, my client, this conviction should be vacated. I would like to rely on the – Unless the jury charged that they must find that death resulted. I would like to address that exactly, Your Honor, and thank you, Judge Larson. So the first document that I would like to refer Your Honors to is the superseding indictment, ECF number 159, page ID 1403. Count one of the indictment is conspiracy to travel in interstate commerce with intent to commit murder. The word death result does not appear. I would like to contrast that, Your Honor, with the third count, which reads conspiracy to possess with intent to distribute five or more kilograms of cocaine. You're arguing about the indictment, but what about how the jury was instructed? Because that's what matters. I'm getting to this, Your Honor. So the next document on my list is the verdict form, ECF number 424, page ID 5173. Verdict form, count one, conspiracy to travel in interstate commerce with intent to commit murder. Guilty. There is no death result here in the verdict form. And again, if we contrast it with count three, conspiracy to possess with intent to distribute and distribution of cocaine, yes, and then more than five kilograms of cocaine. That should have been with death results if that would have been the first charge. And indeed, the amended judgment, too, says. So you're saying they weren't given a special verdict and given the ability to check a box for did death result? Yes, Your Honor. But how were they instructed? Were they instructed you can find the defendant guilty if you conclude that he committed conspiracy with intent to commit murder and death resulted? And then because then if they said he's guilty, then that would be the answer. So we can see that in the jury instructions, the word death result did appear on subsection D of the first charge. But, again, the title of the charge was only with intent to commit murder. And in our mind, the confluence of both the superseding indictment, the jury verdict form, and the judgment in this case, and that was the understanding of the R&R of the magistrate, of the district court, and of this honorable court in 2014 when they wrote on this case for the first time on direct appeal, it says conspiracy to travel in interstate commerce with intent to commit murder. Nobody understood this to be death result until the government argued it. I think we're good. You'll get your full rebuttal when we finish this point. Thank you, Your Honor. Thank you. We'll hear from the government. Good morning. May it please the Court, Mark Chastain for the United States. Good morning. I'd like to begin where Mr. Collier's argument began and really drill down on, I think, where it ended up. Can I just ask you a question? I'm afraid it reveals ignorance, but it's just an intuition I'm struggling with. So let's say one of these convictions, the one he's challenging, put the $100 assessment to the side. This is 2255. I'm just curious how it would work if the elimination of that conviction also would get rid of, say, a forfeiture of a house because it was allegedly a drug house, so a pretty serious piece of property, a restitution, that those would also go to the wayside. Would you still say, well, that's not a custody point, and I'm sorry. You can't get back the house, even though it really should not have been forfeited, given the disappearance of this one conviction. How would that work? Would your only boundary be 1983? That is the state of the law, Your Honor, that those kind of financial considerations, fines, restitution, the special assessment, et cetera, cannot be challenged on 2255. And so as this Court, I think, really drilled down and focused on in the Mays case, an unpublished case from 2003, the essential purpose of the writ of habeas corpus is to free individuals from... So how would you get the house back? Because Heck v. Humphrey would say, gee, the only reason you think you get the house back is to vacate the conviction. So wouldn't you be stuck in this circle and no way to get out? I have to confess that since it was not raised in the briefings, I didn't spend a lot of time studying Heck v. Humphrey and forfeiture. All right. No, that's fine. I just couldn't figure out what you would do in that situation. As to the Court's earlier question about a BOP classification, I don't know the answer to that either, but I would observe that Mr. Amaya has three life sentences, one of them a mandatory life sentence for the conspiracy to travel interstate commerce with intent to commit murder resulting in death, as well as the drug conviction. I'd be surprised, although I don't know for sure if the Bureau of Prisons would reclassify him because the 924C, 924J conviction disappeared. It doesn't seem like that would make a lot of sense. Is there any precedent that dignifies the point, I'll be in a different setting, that the change in custody isn't that you're actually going free, but you could go from maximum security to intermediate? Is there any case law that… That's the next thing I was going to say, Your Honor, is that it still wouldn't be a release from custody as required by 2255. So even if Mr. Amaya could potentially move from one facility to another, it wouldn't be a release from custody as required. Do you view the concurrent sentence doctrine in 2255 proceedings as discretionary? By which I mean on direct appeal, it's essentially a harmless error analysis, and we have discretion whether we rely on it or whether we reach the merits. I think that's quite clear. And I'm curious of the government's position, if the government has an official position, is it still discretionary in 2255 proceedings? Or do we think of it, as Judge Larson had said earlier, as a cause of action, and we have to enforce the plain text of 2255 as written, which would seem to make it more mandatory? I think the case law supports, has considered it as a discretionary doctrine that the courts can apply, but I think Judge Larson did raise a good point that, in fact, it does speak to the very heart of the nature of the action itself, and does raise the question whether, regardless of whether a district court would apply it or not, if a defendant is not, if a prisoner is not claiming the right to be released from custody, that would be the end result of the 2255, whether that even states a cause of action under the statute at all. Yes, so the government hasn't thought through, like, has a uniform position on whether it should be treated? I can't say that there's a uniform position. And then the other question I was going to have is, what sense does it make, you've forthrightly acknowledged in your brief, that ineffective assistance of counsel claims can be used to seek restitution under 2255? I believe that's the holding in Weinberg. How is that, if it is a cause of action that requires somebody to seek their release, I don't understand how they can assert an ineffective assistance claim in which they're only seeking a right to a change of restitution. I would agree with that observation. I don't believe that Weinberger was correctly decided, but that is the... And that's our precedence. Do we have to somehow try to comport what we say here with that precedence since it's binding? I don't believe so because, again, that is a different scenario where the ineffective assistance of counsel claim has allowed other things to come in. Mr. Amaya does not claim ineffective assistance of counsel in this case. Doesn't it seem somewhat arbitrary that it's tied to the claim? If it's ineffective assistance of counsel, yeah, you can seek money. But if it's any other claim, you can't. If we're interpreting a statute, I don't see that on the face of the text of the statute. Again, I agree that the Weinberger decision is an outlier and wrong decision, but I don't think the court should then double down on Weinberger and compound that by... And, counsel, didn't Weinberger itself distinguish restitution from fines? Even if it's a special rule for restitution IAC claims, Weinberger itself said, restitution is not a fine. Our prior precedent is about fines. This is about a fine. I think that's correct. And the special assessment is more in the nature of a mandatory fine if you want to conceive of it that way. What do you make of... I think we've seen plenty of 2255 proceedings where, say, they are either consecutive sentences or I think cases I've seen are Armed Career Criminal Act cases where the Armed Career Criminal Act bumps up the minimum to, what is it, 15 years, and they're claiming that I'm no longer an armed career criminal after change in law and so I should only have a statutory max of 10 years or whatever, so there's a gap. And the person has only served two years. So the person under the text of this provision would not be claiming the right to be released until the prisoner has served too long. But I think we say that those claims are cognizable immediately. You don't have to wait until you're over serving your time. So it strikes me that our case law or even the Supreme Court's case law hasn't necessarily interpreted 2255A as its plain text would suggest. So you would agree with that hypo that you could seek relief there because it's at least going to shorten your sentence. But you're not claiming the right to be released. Well, I think the problem is that the prisoner is caught between a strict interpretation of that and the statute of limitations for 2255. If somebody waited until after they had served their tenure under a non-ACCA sentence to bring their ACCA claim, Johnson claim, or whatever,  you have to allow for a prisoner to bring a timely 2255 within the statute of limitations saying my sentence under the ACCA is wrong. I should be released earlier than it otherwise provides for. So it is, in effect, claiming a right to be released from custody, notwithstanding the sentence that's currently in place. If that's true, and we've interpreted it not according to its plain text, what's wrong with the argument that they're claiming a right to be released from one of the three convictions? Because Mr. Amaya can't be released at all. So what if it were three 10-year sentences? I understand it's three life sentences, but what if it were three 10-year concurrent sentences? It still wouldn't change when he would be released. So they have to be accumulated. So if the effect of winning for somebody in the position of Mr. Amaya would be to be released earlier, then I suppose they might have a claim. But in your example where they have three 10-year concurrent sentences, knocking out one of them isn't going to get them out. If he had a 10-year and two fives, he could challenge the 10. Potentially. Even if they were all being served concurrently. Take this case. Why isn't there a way around this whole thing? Okay, fine, you've got three concurrent life sentences. You only have one that's easily exposed to a good argument, but you've just challenged the other two. Wouldn't we have discretion to deal with the one that's pretty solid for sake of argument and vacate that and then say, well, he fails on the other two? He could, yes. This is just a joke. You can always get at it then. All you have to do is make sure, it's just like a pleading requirement. You better make sure you're challenging the other two. So let's take that example. So say he had done that in this case, and Judge Borman had said, well, I'm going to take first the count one, we'll just go in order. And I find whatever meritless claim he brings against count one denied. He doesn't get relief on that. And he doesn't have to deal with the other two, so it's a docket clearing mechanism. But Judge Borman would have had the discretion to do it in a different way. Take on the serious one. Oh, this is a lot of... So, but, you know, has anyone made this point that this is just silly? I mean, have any courts that have wrestled with this just made the point, if that's what we're getting at, there's nothing that prohibits the defendant from challenging them all and letting the courts in their discretion do the sequencing. They can decide to show one is good and, therefore, the others are concurrent. We don't need to deal with it. Or decide, well, you know, we get rid of this precious $100 assessment. We'll deal with that first and then go to the others. Well, I think the main theory behind the doctrine is to allow courts, frankly, to reduce their workload and not engage in lengthy, difficult litigation and decide difficult legal issues if they don't need to. In the hypothetical, as I understood it, Judge Sutton, is if there's an easily disposed of merits claim, that doesn't require a lot of work from the court. So, in this case, Judge Borman could say, yeah, that's wrong, denied on count one, and I'm going to apply the concurrent sentence doctrine to the others, so I don't need to dig into count three or the merits of any of this stuff, right? And so it doesn't have to be all or nothing. It's a way for courts to manage their docket, manage their caseload, manage their workload, and efficiently decide cases when it's appropriately applied. So, I guess I'm a little confused about what the government's position is. Do you want us to decide this case under this discretionary concurrent sentence doctrine, or do you think that Mr. Amaya does not have a cause of action under 2255? Because those two seem like kind of different things. If he doesn't have a cause of action under 2255, there's nothing any court can do. But if it's this discretionary thing, then there are things courts can do, and I hear the government arguing both things. Well, to be fair, we've only briefed the issue on the discretionary doctrine. I mean, is that true? I mean, I felt like you're… You're right. We did raise the point. I'm sorry. We did raise the point that 2255 requires a defendant to be seeking a release from custody by implication that does point to there not being a cause of action at all. But in this case, Judge Borman applied the concurrent sentence doctrine, and so in the course of seeking to have this court affirm the district court's judgment, that's been the focus of our argument. And I think that would be a fair application in this case in a way this court could decide it. I'm not advocating for the other one, although I certainly recognize the point that, Judge Larson, you've made and think it's a very fair one. Can I ask about, just to go to the merits of the claim, can you talk about how the jury was instructed? Yes. So I think the claim that it's not clear that Mr. Amaya was actually convicted of conspiracy to travel in interstate commerce with intent to commit murder or death resulting is an odd one in light of the instructions that the jury was given in this case. But let's go first to the indictment itself. The defense, or Mr. Amaya's counsel, has pointed to the indictment. In fact, the indictment in paragraph nine of count one spelled out that Franklin C.R. Rodriguez shot and killed Mr. Lucero Carrillo, and that that was part of the conspiracy. So in fact, the indictment did point and gave Mr. Amaya notice on all the reasons that you would have that in an indictment that he was charged with death resulting. And then the elements, the jury was given four elements, that there was the conspiracy, that the conspirators intended to send him, Mr. C.R. Rodriguez, across state lines to commit murder, that Mr. Amaya joined the conspiracy knowingly and intending for the result to come about, the pecuniary gain as required for the murder for hire statute, and fourth, that the death of Joaquin Lucero Carrillo resulted from the conspiracy. So the jury was asked to find that the death of the kingpin or distributor, whoever. As part of the offense itself. It was not set out as a separate special finding like you often see, in fact, in this case, for drug and quantities. If they had not found that element of death resulting, as instructed in this case, they would have acquitted. Is it open to us to just decide this case on the merits and skip this whole concurrent sentence doctrine? If the court believes that it is a discretionary doctrine rather than a cause of action question on 2255, yes. Because it's, again, this court's discretion whether to apply. Well, and it also depends on what you did or did not actually raise in this court. All right, I think we're good. Thank you so much for answering our questions. Thank you. We appreciate it. Mr. Kalir, you have some rebuttal. Please, Your Honors, and may it please the court. A few points. The first, Your Honor, is about costs. The Third Circuit and DUCA and other courts have mentioned the idea that the concurrent sentence doctrine saves resources to the courts. But I agree with Your Honors that all prisoners would do. I'm sorry? If you agree with the point I was making, why didn't you challenge all the convictions? My client didn't do that below, Your Honor. So we're here on appeal. So next time around, the one-off, that's what you do? Correct, Your Honor, and we believe not only my client but all the prisoners will hear word that unless they challenge all their convictions, they will not be heard in court, and that will create a huge burden on this court rather than saving time. The second thing, Your Honor, you asked me, the first question is that both Wray and Rutledge, in your mind, and I completely respect it, apply only to direct appeals. We believe that they are wider than that. And the Eighth Circuit Court of Appeal in Easton v. United States, 9-12-F-3-1-1-2-3 in 2019, and the Fourth Circuit in U.S. v. Charles, 9-32-F-3-1-6-D, Fourth Circuit, 2019, both opined that Wray and Rutledge answer those exact questions more widely than direct appeals, and this is important. Your Honor, Judge Larson, to your question, we do have a problem with the fact that my client was sentenced to life imprisonment for what we consider is not a life imprisonment violation. And we would ask two things, perhaps, from this court. The first is to remand the case below so there will be a hearing on what was it that my client was actually charged with and convicted of, and then to amend it to 255 to allow him to claim IAC because his attorney at the time did not object to the fact that, despite that the predicate offense or the first charge was only with intent to commit murder rather than death results, he didn't object to the life imprisonment. And so I think that surely the district court did not speak to that in this matter, and we would like your Honors to remand and to say that the concurrent sentence doctrine does not apply and that the district court should hold a hearing as to what my client was charged with, and that's precisely why the concurrent sentence doctrine should not apply to begin with, but it's not clear what was he charged with, convicted of, and went to jail for, and therefore we would ask that you would order a hearing from the court below. All right. Thank you very much. We appreciate your written briefs, and thank you, Mr. Chastin and Mr. Kalir, for your oral arguments and, above all, for answering our questions, which we always appreciate. Great honor, Your Honors. Thank you very much. The case will be submitted.